UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO FLORES; DANIEL FLORES; JULIETTE COLUNGA; and YOUNG AMERICANS FOR FREEDOM AT CLOVIS COMMUNITY COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>DR. LORI BENNETT, in her individual and official capacities as President of Clovis Community College; MARCO J. DE LA GARZA, in his individual and official capacities as Vice President of Student Services at Clovis Community College; GURDEEP HÉBERT, in her individual and official capacities as Dean of Student Services at Clovis Community College; and PATRICK STUMPF, in his individual and official capacities as Senior Program Specialist at Clovis Community College,<br><br>Defendants. | Case No. 1:22-cv-01003-JLT-HBK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY AND GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>(Doc. 46; Doc. 47) |

Plaintiffs' claims challenge the constitutionality of a college policy that governs the posting of student flyers on bulletin boards located on the college's internal walls. On April 21, 2023, Defendants filed a motion to stay the case pending the Ninth Circuit's ruling on Defendants' interlocutory appeal of the Court's order granting Plaintiffs' motion for a preliminary injunction. (Doc. 46.) For the reasons set forth below Defendants' motion is **GRANTED in part** and **DENIED in part**.

1

I. **BACKGROUND**

Plaintiffs are students at Clovis Community College. (Doc. 5 at 9.) Their claims challenge the constitutionality of the College's Flyer Policy, which prohibited posters with "inappropriate or offense language or themes." (Doc. 1 at 3, ¶ 6.) Previously, the Court granted Plaintiffs' motion for a preliminary injunction, enjoining Defendants from enforcing the Flyer Policy insofar as it required preapproval from College administrators or staff and prohibited "inappropriate or offense language or themes." (Doc. 40 at 31.) A full explanation of the factual details giving rise to Plaintiffs' claims is set forth in the Court's prior order and not repeated here. (*Id.* at 2-4.) Within several hours of the issuance of the preliminary injunction, the College revoked the enjoined portions of their Flyer Policy. (Doc. 50 at 16; Doc. 50-1 at 14.)

Defendants filed a timely appeal of the Court's preliminary injunction order. (Doc. 42.) The parties have fully briefed their arguments on appeal, and the Ninth Circuit has scheduled the matter for oral argument on July 17, 2023. (Doc. 50 at 7; Doc. 51 at 2.) Defendants filed a motion to "stay the case" pending the Ninth Circuit's decision on the appeal. (Doc. 46 at 1.) In their notice of motion, Defendants explain their request as a motion to "stay the Preliminary Injunction pending appeal" pursuant to Federal Rules of Civil Procedure 62(c) and Federal Rules of Appellate Procedure 8(1)(A). (*Id.* at 2.) Rule 62(c) governs requests to stay proceedings to enforce a judgment, and Rule 8(1)(A) governs a stay or injunction pending appeal. Defendants' accompanying brief, however, focuses primarily on arguments to support staying the district court proceedings pending the appeal (e.g., explaining the burdens and costs of discovery). (Doc. 46-2.). Plaintiffs oppose both a request to stay the case proceedings and to stay enforcement of preliminary injunction. (Doc. 50 at 7.) Although it is unclear whether Defendants' motion seeks to stay enforcement of the injunction as well as to stay the case proceedings, the Court addresses both types of stays out of an abundance of caution.[1]

---

[1] In their reply, Defendants request a "continuance of the Court's hearing" on this motion because they experienced problems accessing Colunga's Declaration submitted with Plaintiffs' opposition on the docket. (Doc. 51 at 4.) As discussed herein, the Court did not find the evidence presented in Colunga's Declaration to adversely impact Defendants' motion to stay. Moreover, the Court did not set a hearing for the instant motion (Doc. 52), rendering Defendants' request moot.

2

1 **II.     REQUEST FOR JUDICIAL NOTICE**

2      With their motion to stay, Defendants filed a request for the Court to take judicial notice
3 of seven documents filed on either this Court's docket or on the Ninth Circuit's docket for the
4 appeal of the preliminary injunction order (No. 22-16762). (Doc. 47.) The seven documents
5 include: (1) Defendants' opening brief on appeal; (2) the clerk's notice setting the matter for oral
6 argument in front of the Ninth Circuit; (3) Defendants' opposition to Plaintiffs' motion for
7 preliminary injunction (Doc. 13); (4) Defendants' motion to dismiss (Doc. 15); (5) Defendants'
8 motion to strike (Doc. 14); (6) this Court's order granting Plaintiffs' motion for preliminary
9 injunction (Doc. 40); and (7) Defendants' notice of appeal (Doc. 42). (Doc. 47 at 2-3.) Plaintiffs
10 did not oppose the request.

11      Under Rule 201, a court may take judicial notice of "a fact that is not subject to reasonable
12 dispute" because it is generally known or "can be accurately and readily determined" from
13 indisputably reliable sources. Fed. R. Evid. 201. "[C]ourts may take judicial notice of documents
14 filed in other court proceedings" or on its docket. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F.
15 Supp. 2d 977, 984-85 (E.D. Cal. 2012); *see also Schulze v. FBI*, 2010 WL 2902518, at *1 (E.D.
16 Cal. July 22, 2010) (quoting *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("A
17 federal court may 'take notice of proceedings in other courts, both within and without the federal
18 judicial system, if those proceedings have a direct relation to matters at issue.'"); *Kelly v.
19 Johnston*, 111 F.2d 613, 615 (9th Cir. 1940). However, facts contained within those filings which
20 are subject to reasonable dispute do not qualify for judicial notice. Fed. R. Evid. 201; *United
21 States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Accordingly, the Court
22 **GRANTS** Defendants' request for judicial notice of the existence of the seven court-filed
23 documents but does not take as true the facts stated therein.

24 **III.     DISCUSSION**

25 **A.     Applicable Standard Governing Motions to Stay**

26      Assuming Defendants intended to request both a stay of enforcement of the preliminary
27 injunction and a stay of the proceedings, the Court must analyze these two requests under
28 separate standards: the *Nken* test and the *Landis* test. The *Nken* test (also referred to as the *Hilton*

3

factors) evaluates when to stay enforcement of a judgment and considers: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 422, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (applying the *Hilton* factors to determine whether to stay the Board of Immigration Appeals' order of removal pending appeal); *see also Hilton*, 481 U.S. at 776 (applying the same factors to determine whether to stay a grant of habeas corpus petition). Conversely, the *Landis* test typically applies to stays of proceedings pending the resolution of a related action in another court. *Landis v. N. Am. Co.*, 299 U.S. 248, 249-50, 254-55 (1936)); *see also Wallis v. Centennial Ins. Co.*, No. 2:08-cv-02558 WBS, 2012 WL 292982, at *2 (E.D. Cal. Jan. 31, 2012) (applying the *Landis* factors to a motion to stay all proceedings pursuant to orders of liquidation issued in a related state court case). The *Landis* factors include: (1) "the possible damage that may result from the grant of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice . . ." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

Although these separate tests exist, "a division has been identified in this Circuit regarding the appropriate standard" to apply when determining whether to stay proceedings pending an interlocutory appeal of a district court order. *Finder v. Leprino Foods Co.*, No. 1:13-cv-2059 AWI BAM, 2017 WL 1355104, at *2 (E.D. Cal. Jan. 20, 2017). Several district courts have applied the *Nken* test to requests to stay proceedings, even though *Nken* traditionally applies to staying judgments. *See Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *2 (N.D. Cal. Apr. 15, 2019) (collecting cases). "Critically, however, none of these decisions discussed the *Landis* test or offered a reasoned analysis as to why the *Nken* test applied." *Id.* Although the Ninth Circuit has not addressed this division, *Mobilize the Message LLC v. Bonta*, No. 2:21-cv-05115 VAP JPR(X), 2021 WL 6104312, at *1-2 (C.D. Cal. Sept. 17, 2021), district courts that have directly confronted the question of whether the *Nken* test or the *Landis* test applies to stays of proceedings "have overwhelmingly concluded that the *Landis* test

or something similar governs." *Kuang*, 2019 WL 1597495, at *2; *see also Andrade Rico v. Beard*, No. 217CV1402KJMDBP, 2019 WL 4127206, at *6 (E.D. Cal. Aug. 30, 2019) ("The few courts that have applied [the *Nken*] standards when considering a stay pending an interlocutory appeal did so without any discussion of the *Landis* standards."); *Hart v. Charter Commc'ns, Inc.*, No. SACV170556DOCRAOX, 2019 WL 7940684, at *4 (C.D. Cal. Aug. 1, 2019) (explaining the *Nken* test primarily applies "when a party seeks to stay the effect of a judgment"; whereas, *Landis* applies to "guide courts deciding whether to stay proceedings").

The Court acknowledges that the parties' briefing focuses only on the *Nken/Hilton* standards, and they do not address the applicability of the *Landis* test. Plaintiffs argue that *Nken* applies to both types of stays, but their cited authorities do not necessitate that conclusion. (Doc. 50 at 7 n.2.) In *Doe #1 v. Trump*, the Ninth Circuit addressed the government's motion to stay the district court's grant of a preliminary injunction but did not consider a stay of proceedings. 957 F.3d 1050, 1056 (9th Cir. 2020). Plaintiffs' cited district court cases used the *Nken* test to evaluate whether to stay discovery, but the courts did not discuss the *Landis* test or explain why *Nken* was the appropriate standard. *See Fraihat v. U.S. Immigr. & Customs Enf't*, No. 19-cv-1546 JGB SHK(X), 2020 WL 6540441, at *1 (C.D. Cal. Oct. 30, 2020); *Nikon Corp. v. GlobalFoundries U.S., Inc.*, No. 17-mc-80071-BLF, 2017 WL 4865549, at *1 (N.D. Cal. Oct. 26, 2017). Because the district courts that have addressed both tests have consistently applied *Nken* only to stays of judgments and *Landis* to stays of proceedings, the Court uses the *Nken* factors to evaluate Defendants' request to stay enforcement of the preliminary injunction and relies on the *Landis* test to evaluate the request to stay the proceedings pending the interlocutory appeal.

**B.     Motion to Stay Preliminary Injunction**

Turning to the *Nken* factors to assess whether to stay enforcement of the preliminary injunction, the first two factors of the test "are the most critical." *Nken*, 556 U.S. at 434. Courts often use a sliding scale approach and evaluate the first two factors on a continuum, weighing the likelihood of success and the possibility of irreparable injury to the movant in the absence of a stay. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011); *Dunson v. Cordis Corp.*, No. 16-cv-05934-EMC, 2016 WL 10679457, at *1 (N.D. Cal. Nov. 8, 2016).

5

Under the sliding scale approach, the movant must satisfy threshold showings of both factors.[2] *Leiva-Perez v. Holder*, 640 F.3d 962, 965-68 (9th Cir. 2011) (per curiam). For the likelihood of success, the threshold does *not* require a showing that the movant is more likely to win than not win on the merits of the appeal. *Id.* at 966. However, "[i]t is not enough that the chance of success on the merits be better than negligible," and "more than a mere possibility of relief is required." *Nken*, 556 U.S. at 434 (internal quotations omitted). Courts routinely use a variety of formulations to evaluate whether the movant has shown a sufficient possibility of success, such as "reasonable probability," "fair prospect," "substantial case on the merits," or that "serious legal questions are raised." *Leiva-Perez*, 640 F.3d at 967-68 (internal quotations and citations omitted).

For the second prong, the movant must show that irreparable harm is probable absent a stay. *Leiva-Perez*, 640 F.3d at 968 ("In other words, [a movant's] burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome.") "[S]imply showing some possibility of irreparable injury" does not suffice. *Nken*, 556 U.S. at 434 (internal quotations omitted). The Court reaches the last two factors only after the first two are satisfied. *Doe # 1*, 957 F.3d at 1058.

1. Likelihood of Success

Defendants contend they will likely succeed on the merits of their appeal of the Court's grant of the preliminary injunction. (Doc. 46-2 at 6-9.) They argue that the Court erred by not concluding that the college's internal walls constitute a non-public forum and by failing to apply the standard for school-sponsored speech set forth in *Planned Parenthood of Southern Nevada, Inc. v. Clark County School District*, 941 F.2d 817 (1991). (*Id.*) To support their contentions that the Court erred in these ways, Defendants largely reiterate the arguments they made in opposition to the preliminary injunction. As explained in the order granting the preliminary injunction, the Court does not find Defendants' arguments regarding the forum analysis or school-sponsored

---

[2] The Plaintiffs argue that the standards and caselaw cited by Defendants in their motion have been overruled by *Nken* and *Leiva-Perez*. (Doc. 50 at 7-8.) In *Leiva-Perez*, the Court explained that *Nken* disallowed "some possibility of irreparable injury" as sufficient for this factor. *Leiva-Perez*, 640 F.3d at 968 (quotations and citations omitted). However, *Nken* did not overrule the sliding scale approach and did not affect the likelihood of success prong. *Id.* at 966. ("If anything, a flexible approach is even *more* appropriate in the stay context." (emphasis in original)).

speech doctrine persuasive and similarly finds they will likely not have a probability of success on appeal.[3]

However, even still, Defendants have raised serious legal questions. As detailed at length in the preliminary injunction order, the applicability of the school-sponsored speech doctrine in the college setting involves a complex constitutional framework for which controlling authority does not exist. (*See* Doc. 40 at 11-14.) Even though the Court issued the preliminary injunction based upon Plaintiffs' vagueness and overbreadth claims without directly ruling on whether the school-sponsored speech doctrine applies, the Ninth Circuit *may* address the school-sponsored speech question on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120-21 (1976) (explaining that appellate courts generally do not consider "an issue not passed upon below" but they may resolve such an issue "where the proper resolution is beyond any doubt" or "where injustice might otherwise result" (internal quotations and citations omitted)); *see also Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020) ("We may exercise our equitable discretion to reach the merits of a case when the court below did not."). Therefore, Defendants' appeal raises complex questions of law that implicate the constitutional rights of many college students, even beyond the Plaintiffs' individual rights. *See Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2018 WL 10701601, at *3 (N.D. Cal. July 16, 2018) ("In the Ninth Circuit, 'serious legal questions' often concern constitutionality, issues concerning a split of authority, or questions of law.").

Plaintiffs argue that Defendants' appeal is moot because Defendants "voluntarily rescinded the entire Flyer Policy after this Court issued its preliminary injunction order, and Defendants express no intention of reinstating the Policy if they prevail." (Doc. 50 at 8-9.) Plaintiffs contend that Defendants have "disavowed" their Flyer Policy. Appellees' Opposition Brief at 31-34, *Flores v. Bennett*, No. 22-16762 (9th Cir. Feb. 21, 2023), ECF No. 13 (citing *Fleet*

---

[3] In their reply, Defendants weigh heavily on the fact that the Ninth Circuit has scheduled oral arguments for this matter for July 17, 2023 to suggest they will likely succeed on the merits of their appeal. (Doc. 51 at 3.) Although the Ninth Circuit may decide an appeal on the briefs where the panel "unanimously agrees that oral argument is unnecessary," Federal Rules of Appellate Procedure 34(2), the Court declines to speculate whether or to what extent setting a case on the argument calendar indicates a likelihood of the appellant's success on the merits.

7

*Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458 (9th Cir. 2021) (holding an appeal of preliminary injunction against NIKE for using an allegedly infringing advertising tagline was moot because NIKE represented it did not plan to use the term after the regularly scheduled end of the advertising campaign, which had already passed)). An appeal from a preliminary injunction order may become moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) (holding the appeal was moot where the preliminary injunction restricted the defendants from engaging in certain conduct to protest plaintiff's drilling practices because the preliminary injunction had expired, and plaintiff had announced it would cease exploration of drilling in that area for the foreseeable future).

Plaintiffs misconstrue the facts and Defendants' arguments on appeal. First, the assertion that Defendants "voluntarily" rescinded the Flyer Policy lacks credibility because it is undisputed that Defendants took this action within hours of the Court's preliminary injunction order. (Doc. 50 at 16.) This sequence of events creates a logical inference that Defendants rescinded the policy *because of* the Court-imposed requirements and to comply with the Court's order. Indeed, their failure to act would likely have placed them in a position to defend against a civil contempt finding. *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). Second, in their appeal, Defendants expressly state that they "have not abandoned their position on the SCCCD prior positing procedure," which does not suggest that they have "disavowed" the policy or abandoned its use for any reason other than to comply with the Court's order. Finally, in Plaintiffs' opposition brief on appeal, they contend the newly amended flyer policy also "permit[s] unconstitutional arbitrary and discriminatory enforcement." Opposition Brief at 24, *Flores*, No. 22-16762. Thus, the serious legal issues surrounding the constitutionality of the College's flyer policies remain "live," and Defendants continue have cognizable interests in the outcome of the appeal.

    2. <u>Irreparable Harm</u>

Even if Defendants' appeal raises serious legal questions to satisfy the likelihood of success prong, the Court must weigh that likelihood against the probability of irreparable harm.

Defendants argue they will incur "extensive legal costs to defend the case and conduct discovery, which may be rendered moot if the Ninth Circuit overrules this District Court's order." (Doc. 46-2 at 10.) Defendants proffered irreparable injury, reiterated many times in its opening brief and reply, relates only a stay of proceedings not to staying enforcement of the preliminary injunction. Defendants have not suggested that any irreparable harm will result if the stay of the preliminary injunction order does not issue. Moreover, given that Defendants have already removed the portions of the College's Flyer Policy enjoined by the order and did so nearly seven months ago, it is not readily apparent how they may suffer irreparable harm by maintaining the status quo under the preliminary injunction. Conversely, as explained in the Court's preliminary injunction order, a presumption of the *Plaintiffs'* irreparable harm exists without preliminary enjoining the challenged portions of the Flyer Policy. (Doc. 40 at 27-28.). Thus, Defendants have not demonstrated the threshold probability of irreparable injury that the *Nken* tests requires to stay enforcement of a judgement. To the extent Defendants sought to stay the preliminary injunction, their motion is **DENIED**.

**C.     Motion to Stay Proceedings**

With respect to the motion to stay the proceedings, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. A court may issue a stay of proceedings in the interests of efficiency and fairness when a "pending resolution of independent proceedings [] bear[s] upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id.* at 864. As previously mentioned, the *Landis* factors help guide the analysis of when a stay is appropriate; they include (1) the possible damage of granting the stay; (2) the hardship or inequity on the movant by not granting the stay; (3) the orderly course of justice. *CMAX*, 300 F.2d at 268.

      1.   Balance of Hardships

Under the first two *Landis* factors, "the Court must balance the hardships of the parties if

the action is stayed or if the litigation proceeds." *Manriquez v. DeVos*, No. 17-CV-07210-SK, 2018 WL 5316174, at *2 (N.D. Cal. Aug. 30, 2018). Plaintiffs argue granting a stay of the proceedings will cause a delay in the adjudication of a permanent injunction. (Doc. 50 at 15.) This delay will allegedly cause substantial injury to Plaintiffs because of the "continued uncertainty" regarding the constitutionality of the Flyer Policy and the College's ability to prohibit flyers based on viewpoint. (*Id.* at 15-16.) Plaintiffs argue that the College administrators continued to prohibit their flyers even after they initiated this lawsuit, allegedly evinced by an instance when administrators disapproved their flyers in September 2022. (*Id.*) However, this instance occurred before the Court issued the preliminary injunction order and the College's subsequent revocation of the challenged restrictions in the Flyer Policy, in October 2022. Plaintiffs also contend that the College has changed the policy multiple times since the Court's injunction, which creates a chilling effect on speech. (*Id.* at 16-17.) However, the changes that the College has made concern the *number* of flyers a student group may post and do not the bear on their content. (*Id.*) The College's restriction on the number of flyers that a student may post applies equally to all groups. (*See* Doc. 50-1 at 3, ¶ 9; *id.* at 33.) This type of restriction greatly differs from the prohibition against "inappropriate and offense language" which targets the messages that students convey in their flyers. It is not readily apparent how a restriction in the number of flyers is akin to the content-based and viewpoint-based challenges that comprise the substance of Plaintiffs' claims.[4]

    A permanent injunction, following discovery and after the parties have fully developed their cases, may provide additional guidance about the types of restrictions the College may or may not impose in their Flyer Policy. However, Plaintiffs have already obtained a preliminary injunction which prevents the College from imposing the viewpoint discriminatory provisions that Plaintiffs challenge in their complaint. As explained above, the preliminary injunction will remain in place during the stay, which mitigates the harm Plaintiffs may suffer due to the delay. *See Kuang*, 2019 WL 1597495, at * 4 (finding enforcement of the preliminary injunction during

---

[4] The College also added a provision to the policy that "postings placed on the bulletin boards become official college announcements." (Doc. 50 at 16; Doc. 50-1 at 17.) While the Court does not take a position the legal accuracy or constitutional implications of this provision, the new provision, standing alone, does not explicitly prohibit any student flyer or message.

the stay "weigh against a finding of harm to Plaintiffs"); *E. Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2019 WL 1048238, at *2 (N.D. Cal. Mar. 5, 2019) (same).

Plaintiffs also argue the Court should deny a motion to stay because Defendants engaged in dilatory tactics to delay scheduling a Rule 26(f) conference. (Doc. 50 at 14.) In September 2022, Plaintiffs initially contacted Defendants about setting the Rule 26(f) conference and requested a November 2022 date. (*Id.*) After the Court issued the preliminary injunction order in October 2022, the parties agreed to postpone the conference to allow for settlement negotiations. (*Id.*) When negotiations stalled, Plaintiffs again contacted Defendants about setting the Rule 26(f) conference around mid-March 2023. (*Id.*) Approximately two weeks later, Defendants responded and informed Plaintiffs of their intention to file this motion to stay. (*Id.*) Roughly three weeks after this communication, Plaintiffs sent another request to set the scheduling conference, and Defendants subsequently filed this motion to stay. (*Id.*) Plaintiffs argue that the instant motion and the delays in communication demonstrate Defendants' intent to delay proceedings to gain a settlement or litigation advantage. (*Id.*)

To the extent dilatory motive is relevant under a *Landis* analysis, the Court does not find that Defendants' conduct evinces an improper motive. The Court encourages parties to engage in settlement negotiations, and any pause in formal litigation between November 2022 and mid-March 2023 due to such negotiations appropriately avoided wasting judicial resources. The two-week delay in failing to respond to Plaintiffs' communication in mid-March and subsequent three-week delay in filing the motion to stay, while not demonstrating the upmost promptness, may simply reflect the necessary time for counsel to consult with the clients, form a litigation strategy, and draft their motion. Most importantly, Plaintiff have not alleged any prejudice or harm that resulted from this five-week delay.

Defendants argue the stay will not harm Plaintiffs because the length of stay is likely to be short, given that the Ninth Circuit has set the case for oral arguments within less than two months of this order. (Doc. 51 at 6.) However, the appellate rules of procedure do not require the Ninth Circuit to issue a ruling on preliminary injunction appeal within a certain timeframe. U.S. Ct. of App. 9th Cir. Rule 3-3, 34-3; *see also Kuang*, 2019 WL 1597495, at * 4. Even if the Ninth Circuit

promptly issues its ruling, the significance of the constitutional questions presented suggests the parties may file a petition for rehearing en banc or a petition for certiorari at the Supreme Court.

Defendants also argue a stay is warranted because they will suffer irreparable harm if litigation proceeds while awaiting a decision from the Ninth Circuit. Defendants argue that the issues raised on appeal underlie all of Plaintiffs' claims, and the "Ninth Circuit's judgment will be essentially determinative for this case." (Doc. 46-2 at 10.) They allege that the Ninth Circuit may conclude that the school-sponsored speech doctrine applies, and the Flyer Policy did not infringe the students' free speech rights "[r]egardless of wording." (*Id.*) This ruling would allegedly render moot the need for further discovery and litigation in this case and requiring Defendants to proceed before that ruling would unnecessarily waste public funds. (*Id.*)

"[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255). On the other hand, conducting "'substantial, unrecoverable, and wasteful' discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to hardship or inequity sufficient to justify a stay." *Finder*, 2017 WL 1355104, at *4 (quoting *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2015 WL 5103157, at *4 (E.D. Cal. Aug. 31, 2015)). The overlap between the merits of Plaintiffs' claims and Defendants' challenges presented on appeal indicates that the Ninth Circuit's decision will likely streamline the issues the parties must litigated moving forward in this action. *See Herbalife Int'l of Am. Inc. v. Ford*, No. CV072529GAFFMOX, 2008 WL 11491587, at *2 (C.D. Cal. Mar. 12, 2008) ("Any determination from the Circuit, one way or the other, will go far in streamlining the case.") Even if the Ninth Circuit does not set a bright-line rule on the school-sponsored speech doctrine, it will likely provide significant guidance for the legal questions presented and will inform the parties' future litigation and discovery strategies. A decision by the Ninth Circuit regarding the likelihood of success on the merits of Plaintiffs' claims may also encourage a settlement without the need for further litigation.

For these reasons, the Court finds the balance of hardships tips in Defendants' favor. Although cognizant that delaying a final decision about the scope of a permanent injunction *could*

lead to some chilling of student speech, the preliminary injunction sufficiently safeguards the students' First Amendment rights until this litigation concludes. The litigation costs to conduct discovery and file dispositive motions while awaiting a binding appellate decision covering the same issues that the parties present to this Court would likely cause unnecessary waste of the parties' resources. Thus, the Court finds the first two *Landis* factors weigh in Defendants' favor.

2. Orderly Course of Justice

The third *Landis* factor considers the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268. "[W]hile it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). In the context of a stay pending appeal of a preliminary injunction, the Ninth Circuit has "repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction" because preliminary injunctions often involve a limited review of the factual record and "may provide little guidance as to the appropriate disposition on the merits." *California v. Azar*, 911 F.3d 558, 58-84 (9th Cir. 2018).

A *Landis* stay is inappropriate if another proceeding is "unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court." *Lockyer*, 398 F.3d at 1113. However, courts typically stay cases when the outcome of another proceeding will have preclusive effect on the pending issues. *Safari Club Int'l v. Bonta*, No. 222CV01395DADJDP, 2023 WL 3505373, at *1 (E.D. Cal. May 17, 2023) (granting stay where the interlocutory appeal of the court's denial of the preliminary injunction "contained all of the substantive legal issues in dispute in this litigation"); *see also Andrade Rico*, 2019 WL 4127206, at **5, 8 (staying proceedings pending interlocutory appeal where the merits of plaintiffs' claims were intertwined with the questions of qualified immunity on appeal because a grant of qualified immunity would result in dismissal of the claims); *but see Johnson v. Starbucks Corp.*, No. 2:18-CV-1886 WBS EFB, 2019 WL 3202849, at **2-3 (E.D. Cal. July 16, 2019) (denying request to stay where appeals pending in other cases involved similar legal issues but where the factual development of

1   plaintiff's case may distinguish it from those on appeal).

2   The Ninth Circuit's ruling on Defendants' appeal of the preliminary injunction likely will
3   simplify the issues and questions of law for the remainder of litigation in this matter. On appeal,
4   Defendants challenge the likelihood of success on the merits, which reflects a large portion of the
5   substantive issues in dispute. *See* Appellants' Opening Brief, 15-28, *Flores v. Bennett*, 22-16762
6   (9th Cir. Dec. 9, 2022), ECF No. 6. Defendants' two main arguments on appeal concern whether
7   the traditional school-sponsored speech doctrine of *Hazelwood* and *Planned Parenthood* apply in
8   the college context and whether the Court erred by not concluding that the College had complete
9   discretion over the bulletin boards as non-public forums. *Id.* at 15-26. Defendants also challenge
10  Plaintiffs' claims that the Flyer Policy is facially overbroad and vague. *Id.* at 26-28. The appeal
11  does not encompass Plaintiffs' as-applied constitutional claims, and the Ninth Circuit may decide
12  the outcome of the preliminary injunction without addressing all claims. However, the complexity
13  of the constitutional issues that permeate each claim on appeal make it likely that the Ninth
14  Circuit's opinion will significantly guide this Court's future analysis on these legal questions. The
15  ultimate relief sought by Plaintiffs is a permanent injunction, similar to the relief granted by the
16  preliminary injunction. Given the substantial overlap of the legal issues and the relief sought,
17  awaiting a decision by the Ninth Circuit will minimize the risk of inconsistent judgments. *See*
18  *Babaria v. Blinken*, No. 22-cv-05521-SI, 2023 WL 187497, at *2 (N.D. Cal. Jan. 13, 2023)
19  (staying case where the relief sought was "nearly identical to that sought in the preliminary
20  injunction that is being appealed").

21  Moreover, the Court finds that the concerns the Ninth Circuit expressed in *Azar* warning
22  against staying an action pending an appeal of a preliminary injunction are not present here.
23  Although the preliminary injunction preceded discovery, the parties presented a fairly developed
24  factual record when briefing and arguing that motion. They submitted a myriad of declarations
25  and evidence that revealed few genuinely disputed material facts. The parties' disputes primarily
26  involve questions of law and application of law to facts. As discussed above, the Ninth Circuit
27  will likely provide highly relevant guidance and possibly create dispositive authority regarding
28  the applicability of the school-sponsored speech doctrine, upon which Defendants rely to argue

1   that its Flyer Policy does not infringe the students' constitutional rights.

2   Finally, granting a stay will promote judicial economy. Defendants' pending motion to
3   dismiss similarly challenges the validity of Plaintiffs' claims based on *Hazelwood* and *Planned*
4   *Parenthood* and under the theory that the bulletin boards are non-public forums. (Doc. 15.)
5   Although the motion to dismiss raises other issues, such as qualified immunity from punitive
6   damages and whether Plaintiffs' have standing, the substantial overlap in the legal questions
7   presented indicate that a ruling from the Ninth Circuit would help streamline the Court's ruling on
8   the motion to dismiss. It would waste scarce judicial resources to grapple with the same legal
9   questions before the Ninth Circuit, if it were to rule on the motion to dismiss. Moreover, if the
10  outcome on appeal is contrary to this Court's findings in the preliminary injunction order,
11  deciding the motion to dismiss in the interim may cause the course of this litigation to go astray.

12  Defendants argue that the interests of judicial economy do not favor a stay because
13  Plaintiffs lack a likelihood of success on appeal. (Doc. 50 at 18-19.) Defendants contend that
14  permitting discovery while awaiting a decision from the Ninth Circuit will facilitate "efficient
15  fact-finding and adjudication of the case in line with the Ninth Circuit's ruling" to help resolve
16  the as-applied constitutional claims. (*Id.*) Although the appeal does not clearly encompass the as-
17  applied claims, the Ninth Circuit's decision about the applicability of the school-sponsored
18  speech doctrine and forum analysis will likely impact those claims. For example, if the Ninth
19  Circuit concludes it is unnecessary to determine the precise type of forum to evaluate the
20  viewpoint discriminatory claims, the parties can avoid discovery on this issue. Moreover, if the
21  school-sponsored speech doctrine is inapplicable to the non-curricular college context, the parties
22  need not continue to develop arguments addressing this doctrine with respect to the Plaintiffs'
23  flyers on the College's bulletin boards. Awaiting a controlling decision from the Ninth Circuit
24  will streamline those issues for the parties and the Court in managing future litigation.

25  Evaluating all the *Landis* factors, the Court finds the potential waste of judicial and private
26  resources and the risk of inconsistent judgments outweighs any potential harm Plaintiffs may
27  suffer by the delay in reaching a final judication of their claims. *See Babaria*, 2023 WL 187497,
28  at \*\*2-3 (granting stay where the balance of hardships was neutral but judicial economy weighed

heavily in favor of granting a stay, given the overlap in issues presented); *see also Finder*, 2017 WL 1355104, at **3-4 (granting stay of proceedings where the pending appeal concerned a legal question for which district courts had reached differing conclusions because the Ninth Circuit's decision would "dramatically simplify the questions of law and potentially the question of proof now pending before the court"). Accordingly, the Court **GRANTS** Defendants' motion to stay the proceedings pending the appeal.

## IV.  ORDER

For the reasons stated above, the Court **ORDERS**:

1. Defendants' request for judicial notice (Doc. 47) is **GRANTED**.
2. Defendants' motion to stay (Doc. 46) is **GRANTED in part** and **DENIED in part**.
3. All proceedings in this action, including discovery and rulings on the pending motions, are **STAYED** until the Ninth Circuit issues a final decision on Defendants' appeal of the preliminary injunction and a mandate issues.
4. Within thirty days of the Ninth Circuit's mandate, the parties **SHALL** file a joint status report detailing their positions regarding the pending motion to dismiss (Doc. 15) and the pending motion to strike (Doc. 14). The parties **SHALL** also include their proposals for setting a Rule 26(f) scheduling conference.

IT IS SO ORDERED.

Dated:   **June 1, 2023**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE

16