**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 3 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEJANDRO FLORES; et al.,<br><br>        Plaintiffs-Appellees,<br><br> v.<br><br>LORI BENNETT, Dr., in her individual and official capacities as President of Clovis Community College; et al.,<br><br>        Defendants-Appellants. | No. 22-16762<br><br>D.C. No.<br>1:22-cv-01003-JLT-HBK<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, Magistrate Judge, Presiding

Argued and Submitted July 17, 2023
San Francisco, California

Before: WARDLAW and M. SMITH, Circuit Judges, and RAYES,[**] District Judge.

Defendants—the President of Clovis Community College ("Clovis") Lori

Bennett, Vice President of Student Services Marco De La Garza, Dean of Student

---

     [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

Services Gurdeep Hebert, and Senior Program Advisor Patrick Stumpf—appeal a district court order enjoining Clovis's "Flyer Policy" that prohibited "inappropriate or offense [sic] language or themes" in postings on interior bulletin boards. The district court held that the Plaintiffs—then-Clovis students Alejandro Flores, Daniel Flores, and Juliette Colunga, as well as the Young Americans for Freedom ("YAF") student chapter at Clovis—were likely to succeed on the merits of their claims that the challenged provision was facially overbroad under the First Amendment and unconstitutionally vague under the Fourteenth Amendment.

We review a district court's grant of a preliminary injunction for an abuse of discretion. *Olson v. California*, 62 F.4th 1206, 1218 (9th Cir. 2023). Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

1. This appeal was not mooted, as Plaintiffs contend in their briefing, when Clovis rescinded the original Flyer Policy and replaced it with a policy that did not contain the "inappropriate or offense" provision.[1] "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth,*

---

[1] Defendants oppose Plaintiffs' motion to supplement the record with the Replacement Policy. However, "[c]onsideration of new facts may even be mandatory. . . when developments render a controversy moot and thus divest [the court] of jurisdiction." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003). As the existence of the Replacement Policy bears directly on the question of mootness, we **GRANT** the motion to supplement the record (Dkt. No. 14).

2

*Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Therefore, the party asserting mootness faces a "heavy burden" of establishing that "the challenged conduct cannot reasonably be expected to start up again." *Id.* Plaintiffs have not met their burden. Plaintiffs misrely on *Fleet Feet, Inc. v. NIKE Inc.*, 986 F.3d 458 (4th Cir. 2021), where the Fourth Circuit determined an appeal was moot because it was certain that NIKE would never again use the contested Super Bowl advertising campaign. *Id.* at 462–63. Unlike in *Fleet Feet*, Defendants could easily reinsert the challenged provision into Clovis's flyer policy absent the preliminary injunction. Indeed, Defendants have refused to disavow the old Flyer Policy, and "vigorously defend[ed]" its legality. *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (internal quotation marks omitted).

    2.    The district court did not abuse its discretion when it concluded that Plaintiffs were likely to succeed on the merits of their claim that the "inappropriate or offense language or themes" provision was facially overbroad. To prevail on an overbreadth challenge, a party must demonstrate that the policy "'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,'" such that "society's interest in free expression outweighs its interest in the statute's lawful application." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). As the district

court concluded, "a prohibition on 'inappropriate or offense language or themes' does not have a core of readily identifiable, constitutionally proscribable speech." The Supreme Court has consistently held that "[s]peech may not be banned on the ground that it expresses ideas that offend," *Matal v. Tam*, 582 U.S. 218, 223 (2017), including in the university context. *See, e.g.*, *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973) (holding that a graduate student could not be expelled for publishing an obscene cartoon).

The district court did not err in determining that there was likely a substantial amount of protected speech that would be potentially chilled by the Flyer Policy. What is "inappropriate" or "offensive" is a subjective determination, which would vary based on a college administrator's personal beliefs. Political speech, for example, has a high propensity to be viewed as "offensive," and the First Amendment "affords the broadest protection" to political expression. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995).

On appeal, Defendants contend that, because the interior bulletin boards are a nonpublic forum and the school-sponsored speech doctrine applies, they have absolute discretion to control the content of student flyers. However, to conduct an overbreadth analysis, we are not required to first determine the speech's forum. *See, e.g.*, *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573–74 (1987). Moreover, we require regulations on speech in

nonpublic fora to be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (alteration omitted) (quoting *Perry Education Ass'n. v. Perry Loc. Educators' Ass'n.*, 460 U.S. 37, 46 (1983)). The district court did not abuse its discretion by assuming without deciding that the bulletin boards were located on a nonpublic forum, and then concluding that the challenged provision was likely unconstitutionally overbroad.

The school-sponsored speech doctrine likewise not does not affect our analysis. While we have applied the school-sponsored speech doctrine in the K-12 context, *see Planned Parenthood of S. Nevada, Inc. v. Clark Cnty. Sch. Dist.*, 941 F.2d 817, 820 (9th Cir. 1991), we have declined to extend the doctrine to the university context. *See Oyama v. Univ. of Hawaii*, 813 F.3d 850, 862 (9th Cir. 2015). As the district court recognized, some form of the school-sponsored speech doctrine could apply to postings that may be "reasonably perceive[d] to bear the imprimatur of the school" by members of the public. *Hazelwood v. Kuhlmeier*, 484 U.S. 260, 271 (1998). However, assuming without deciding that the school-sponsored speech doctrine applies, the Flyer Policy was nevertheless required to be "reasonably related to legitimate pedagogical concerns." *Id.* at 273. While Clovis may have been able to permissibly ban lewd and obscene flyers that included nudity or profanity, *see, e.g.*, *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675,

5

685 (1986), the district court did not abuse its discretion in determining that a ban on "inappropriate and offense language or themes" is likely too broad to be "reasonably related to legitimate pedagogical concerns."

      3.      Nor did the district court abuse its discretion in concluding that the Flyer Policy was likely unconstitutionally vague in violation of the Fourteenth Amendment. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The "inappropriate and offense" provision does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.*; *see also Cohen v. California*, 403 U.S. 15, 19 (1971) ("No fair reading of the phrase 'offensive conduct' can be said sufficiently to inform the ordinary person that . . . permissible speech or conduct would nevertheless . . . not be tolerated in certain places."). Moreover, the provision invites "arbitrary and discriminatory enforcement," *id.*, by unilaterally allowing Clovis staff to determine what flyers constitute "inappropriate or offense" speech. Indeed, emails between the Clovis administrators demonstrate that they did not understand what speech the Policy proscribed. And "when First Amendment freedoms are at stake," Clovis was required to enact a policy with "an even greater degree of specificity and clarity." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).

4. Because we affirm the district court's overbreadth and vagueness determinations, we decline to reach the Plaintiffs' prior restraint and viewpoint discrimination claims.

**AFFIRMED.**